IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL A.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 3:21-cv-01003-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Michael A. brings this action for judicial review of the final decision of the Commissioner of Social Security denying his application for Title XVI Supplemental Social Security Income ("SSI"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendant's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in 1992, plaintiff alleges disability as of his birth due to Autism Spectrum Disorder. Tr. 348. Plaintiff filed his SSI application on April 24, 2015. Tr. 301. His application was denied initially and upon reconsideration. Tr. 182, 190. Plaintiff then requested a hearing which commenced before an Administrative Law Judge ("ALJ") on July 11, 2017. Tr. 91. The ALJ issued a decision finding plaintiff not disabled on November 29, 2017. Tr. 153.

Plaintiff timely appealed and, on April 8, 2019, the Appeals Council reversed the ALJ's decision and remanded the case for further proceedings. Tr. 175. A second ALJ hearing was held on May 19, 2020, resulting in another benefit denial on December 28, 2020. Tr. 10. Plaintiff then filed a complaint in this Court.

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his SSI application date. Tr. 15. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: "neurocognitive disorder, mathematics disorder, borderline intellectual functioning, and mild autism spectrum disorder." Tr. 16. At step three, the ALJ concluded that plaintiff did not have an impairment that meets or medically equals a listed impairment. *Id*.

The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations:

> he can understand and remember simple instructions and work-like procedures, and would learn best by hands on demonstration; he has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek; he can work at a regular, but not fast production pace; he should have

---

[2] The record before the Court constitutes more than 830 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

only brief, superficial interactions with the general public; he is able to make simple work-related decisions and should be in a work environment with few changes to the work setting; and he would do best working outdoors.

Tr. 18.

At step four, the ALJ concluded that plaintiff did not have any past relevant work. Tr. 26-27. Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as "lot attendant," "grounds keeper," and "pressure washer." Tr. 27.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly weighing the medical evidence, rejecting his subjective symptom testimony and the lay witness statements, and failing to find him disabled under Listing 12.10. Pl.'s Opening Br. 3-33 (doc. 13). Defendant concedes harmful legal error in regard to the medical evidence, such that the sole issue on appeal is the proper legal remedy. Plaintiff asserts a remand for the immediate payment of benefits is warranted because the record is fully developed and the "combined effects of all mental symptoms preclude work activity." *Id*. at 34. In contrast, defendant requests further proceedings to reevaluate steps two through five of the sequential evaluation process due to ambiguities in the record. Def.'s Resp. Br. 2 (doc. 16). Defendant also asserts that "serious doubts remain whether [p]laintiff is disabled." *Id*. at 4.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the

Page 3 – OPINION AND ORDER

record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted).

As noted above, it is undisputed that the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for rejecting medical evidence in the record. This evidence includes assessments by Mitchell Luftig, Ph.D., James Bryan, Ph.D., Richard Cohen, M.D., Mary Nichols, Ph.D., and Shawn Johnston, Ph.D.

Notably, in November 2002, Dr. Luftig conducted a psycho-educational evaluation on behalf of Oregon City Public Schools to determine if plaintiff still qualified "as a student with Autism Spectrum Disorder." Tr. 460-61. Dr. Luftig found plaintiff's intellectual function was "within the low average range" and that he was "very slow in processing visual information." Tr. 465. In December 2008, Dr. Luftig conducted a follow-up psycho-educational evaluation. Tr. 468. Again, the doctor noted that plaintiff's test results ranged between low-average to extremely low. Tr. 476. Dr. Luftig opined that plaintiff will "find it challenging to perform tasks which expect him to attend to information and immediately recall the information." Tr. 475.

In February 2014, Dr. Bryan performed a cognitive and mental health assessment on behalf of Vocational Rehabilitation Services. Tr. 584. Dr. Bryan diagnosed plaintiff with a "mathematical based learning disorder," Asperger's Syndrome, and Borderline Intellectual Functioning. Tr. 597. Dr. Bryan characterized plaintiff's social interactions as "markedly rudimentary and minimal" and "clearly below age-appropriate level, consistent with an autistic-related pattern." Tr. 597-98. The doctor noted that "tasks involving strong social interaction or communication abilities" would be counterproductive. Tr. 598. Dr. Bryan therefore recommended the services of a job coach as well as social accommodation from a support person to help instruct and monitor plaintiff to ensure he "stays on track" in any work setting. *Id*.

The following month, Dr. Nichols performed a neuropsychological evaluation for Vocational Rehabilitation Services. Tr. 698. Dr. Nichols diagnosed plaintiff with Asperger's Disorder, Mathematics Disorder, and Borderline Intellectual Functioning. *Id*. The doctor identified functional limitations such as "difficulty sustaining concentration," "markedly rudimentary" social interactions, and an inability to "problem solve." *Id*. The doctor opined that plaintiff "cannot work at a production speed required for most competitive employment" and has an "extremely low rate of information processing speed." *Id*. Dr. Nichols thus recommended plaintiff be limited to "tasks which do not require strong social interaction or communication abilities" and do not require "complex learning . . . or problem solving." *Id*.

In September 2015, Dr. Johnston performed a psychodiagnostics exam on plaintiff for the Oregon Department of Human Services. Tr. 600. Dr. Johnston diagnosed plaintiff with Alcohol Use Disorder, Marijuana Use Disorder, and an "Unspecified Neurodevelopmental Disorder, mild." The doctor stated plaintiff "demonstrated the ability to understand and remember straightforward, one-step instructions." Tr. 603. In contrast to Drs. Bryan and Nichols, Dr. Johnston concluded that plaintiff "would be capable of working a normal day or normal week." Tr. 604. Plaintiff thereafter did not obtain any treatment or undergo any additional medical evaluations.

As a result, the ALJ called a medical expert – Dr. Cohen – to testify at the May 2020 hearing. Tr. 292. Initially, when asked whether he could attest to plaintiff's symptoms during the relevant time period, Dr. Cohen stated: "I know how he was doing up until 2015 . . . But I don't have anything in the past five years, and we need something." Tr. 45-46. Based on a review of plaintiff's existing medical records, Dr. Cohen diagnosed plaintiff with Asperger's Syndrome, Borderline Intellectual Functioning, and learning disorders in math and reading. Tr. 43, 46-47. The doctor stated plaintiff has "rudimentary problems with social interactions" and "extreme low-

processing speed." Tr. 48. However, the doctor also noted that the record, as of 2015, reflected daily alcohol and marijuana usage, which could "affect [his] opinions" if plaintiff had sustained such usage. Tr. 49. Dr. Cohen suggested these substances could impact plaintiff's "processing speed" and "working memory," and cause "dysphoria" and "amotivational syndrome." *Id.* The doctor emphasized "there is really insufficient evidence here," and that plaintiff's symptoms could improve with treatment or substance use cessation. Tr. 49-50, 53.

In October 2020, Dr. Johnston performed a follow-up neuropsychological screening. Tr. 817. Dr. Johnston subsequently diagnosed plaintiff with an "Unspecified Neurodevelopmental Disorder, provisional [Autism Spectrum Disorder]," Borderline Intellectual Functioning, and Marijuana Use Disorder. Tr. 821. The doctor opined that plaintiff's "ability to attend, concentrate and persist are mildly impaired," and "his ability to engage in appropriate social interactions is limited." *Id*. Dr. Johnston again concluded that plaintiff "would be capable of doing some kind of work" but that his "passive personality style, lack of motivation and chronic marijuana use are likely to limit his effectiveness in a work environment." *Id*.

Further proceedings in this case would be useful, given that conflicts and ambiguities exist within the medical evidence. Despite the limitations described above, plaintiff was able to obtain and maintain a driver's license. Tr. 74. He also successfully completed his GED requirements after dropping out of school. Tr. 601. Plaintiff performs in a band and was injured while intoxicated and "crowd surfing" at a concert. Tr. 688. He has a group of friends he regularly sees and plays disc golf with. Tr. 819. Additionally, although plaintiff has been unable to maintain any consistent employment, he has not paid for his daily marijuana "for years" because he helps friends who grow, "trim," and prepare the product. Tr. 105-06. Overall, this evidence tends to suggest that

Page 6 – OPINION AND ORDER

plaintiff is less socially limited and capable of independently following through with tasks when he is motivated to do so.

Furthermore, even the reports of Drs. Bryan and Nichols indicate that, "once tasks are presented to [plaintiff], it is expected that he would be able to continue to perform them independently." Tr. 598, 698. Dr. Cohen was emphatic that plaintiff's impairments could improve if he stopped using alcohol and marijuana and obtained treatment. Tr. 53-54; *see also id.* at 50-53 (Dr. Cohen stating: "I'm wondering why he is not getting treatment . . . he really needs to be getting treatment right now . . . There's too big a gap, five years of non-medical evidence. That would be at least non-compliance for somebody who has severe emotional issues").

As a result, there is sufficient uncertainty as to whether plaintiff is disabled, such that further proceedings are required to resolve this case. *See Treichler,* 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the complex and long-standing nature of plaintiff's mental impairments, coupled with the remote alleged onset date and dearth of recent medical evidence, an in-depth psychological or neurodiagnostic assessment would be helpful to assess the interplay between plaintiff's underlying conditions and substance use. Therefore, upon remand, the ALJ must obtain a consultative exam and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, defendant's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 11th day of July, 2022.

                          /s/ Jolie A. Russo
                              Jolie A. Russo
                    United States Magistrate Judge